## MARY ELLIOTT *vs.* THOMAS GIBBONS.

An acting administrator was appointed general guardian of the infant children of the intestate, and he and the widow and children resided together, as one family, in the dwelling house formerly owned by the testator; and he subsequently married one of the infant children and continued to reside there, with his wife. He advanced the means, from time to time, and paid the expenses incurred in the support of the family. At three several times, as general guardian of the infants, he obtained orders from the county court, for the sale of the lands which had descended to his wards, from their father, and in which the widow had an estate in dower, the proceeds of which sales, including the widow's share, for her dower interest, went into his hands. In an action brought against the administrator and guardian, by the widow, to recover a compensation for her dower interest; *Held*, that under these circumstances the law would not imply a promise on the part of the widow to repay to the guardian the money thus furnished or expended by him, in support of the family; but that on the contrary, the legal inference was, the money was furnished and advanced by him as *guardian*, and not as *creditor of the widow*.

Accordingly *held*, that the moneys thus advanced by the guardian could not be set off or allowed as a counter-claim, in such action, against the widow's claim for dower.

APPEAL from a judgment entered in favor of the plaintiff, upon the report of a referee, for $2840.89, besides costs; that being the balance of the plaintiff's claim after deducting a counter-claim of $105 and interest, allowed to the defendant. The rest of the defendant's counter-claim was disallowed.

*P. S. Crooke,* for the plaintiff.

*S. M. & D. E. Meeker,* for the defendant.

*By the Court,* BROWN, J. This action is brought by the plaintiff to recover certain moneys, the consideration and compensation for her dower in lands whereof John H. Elliott, her late husband, died seized, in the county of Kings. Her right to the moneys, and the fact that the defendant had received and was liable for them, primarily, was not denied in the an-

Elliott *v.* Gibbons.

swer. The real subject of litigation is the set off or counter-claim of the defendant.

John H. Elliott died on the 25th July, 1855, and the plaintiff, Mary Elliott, Thomas Gibbons, and one Henry G. Law became his administratrix and administrators. The defendant took charge of the settlement of the estate and did most of the business. There were six infant children of the deceased, for whom the defendant was appointed general guardian. The widow and the children continued to reside in the house of which the deceased was owner at the time of his death ; and a few months after this event the defendant became an inmate of the family, residing with his wards and the widow as one family. In a few months he married one of the infants, and until some time after her death, which occurred some eight months after the marriage, there was no change in the family. He advanced the means, from time to time, and paid the expenses incurred ; sometimes paying the money into the hands of the plaintiff directly, and at other times paying for and furnishing the articles needed for its support. The offset or counter-claim consists of charges and items for the moneys thus paid, and the expenses incurred.

At three several times the defendant, as the general guardian of these infants, obtained orders from the county court of Kings for the sale of the lands which had descended to his wards from their father John H. Elliott, and in which the plaintiff, as his widow, had the estate in dower to which I have referred. The sales were consummated, and she released her dower, in accordance with the order of the county court ; her dower being estimated in the three parcels to be of the value of $2770.62. These proceedings were had upon the petition of the defendant, and were consummated by the execution of the deeds of conveyance, in the years 1857 and 1858.

The personal estate of the deceased was insufficient to pay his debts, and we are left to estimate the value of the real property of the infants from the estimated value of the widow's dower. The offset claimed amounts to the sum of

$2665.97, which, except one item of $105 paid for the plaintiff individually, is the sum charged as expended for the support and maintenance of the family between the 25th July, 1855, and the 15th September, 1857, a period of two years and less than two months.

The idea of appropriating the whole (or nearly the whole) of the proceeds of the widow's estate in the lands to the support and the uses of a family, of which the defendant himself and his wife for a large part of the time, and his five wards for the whole of the time, were members, is manifestly unjust upon the face of it. So long as these infant children had property of their own, the mother was under no legal obligation to support them. If there was property, (as there doubtless was in this instance,) the legal obligation was imposed upon the defendant, their general guardian. We do not see upon what ground he applied for the order to sell their lands. One of the grounds which the statute furnishes for the granting of such an order by the courts is, that the proceeds are wanted for the support and education of the infant. We may safely infer that this was the ground of the guardian's application. And when he furnished the means, from time to time, for the support of these infants, without any understanding or intimation that it was to be charged to the mother, the legal inference is that he furnished it as guardian, and not as creditor of the mother. Whatever was furnished was applied to the support of his own wife, to the support of himself for a part of the time, and to the support of his wards, over whose estate he had, and finally obtained, absolute control with the power of conversion into money. The referee could not—because the law would not—imply an assumpsit from such a state of facts. The mother may be under a legal as well as a moral obligation to contribute something to the maintenance of a family of which she was a member, and in which she was supported. But the pleadings are not framed with a view to examine and determine that question. Nor does the defendant seek in this action any such relief. I am therefore of

opinion that the referee properly rejected all the defendant's offset, except the charge for $105, with the interest.

On the trial, Gibbons was asked by his own counsel how much money he had received on the 15th September, 1857, from the real estate and such property as came to his hands as general guardian. The plaintiff's counsel objected, and the referee overruled the question. Under the view I have taken of the case, it was of no consequence what money was in the hands of the defendant as guardian of the children. The question still recurs, whether there was any thing in the transaction from which the law would imply a promise on the part of the mother to repay to the defendant the money furnished or expended in support of the family.

The judgment should be affirmed.

Judgment affirmed.

[KINGS GENERAL TERM, December 12, 1859. *Lott, Emott* and *Brown,* Justices.]